

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 30, 1947

Hon. J. P. Gibbs
Casualty Insurance Division
Board of Insurance Commissioners
Austin 14, Texas

Opinion No. V-280

Re: Clarification and am-
plification of Opinion
No. 0-7300, construing
Section 21 of Article
1302-a, V. C. S., rela-
tive to division of
premiums with abstract-
ers representing title
insurance companies;and
the meaning of "an
abstract plant" as used
therein.

Attention: Mr. Ned Price
Director,Title Section

Dear Sir:

Your request for advice of this department
states that Opinion No. 0-7300, rendered under a former
Attorney General, does not adequately cover questions
before your department in the administration of your du-
ties under House Bill 153, Chapter 40, Acts of the 41st
Legislature, regular session, 1929, page 77, and amend-
ments thereto, published as Article 1302-a of Vernon's
Civil Statutes. You request amplification and clarifica-
tion of Opinion No. 0-7300. Your statement and questions
read:

"The questions now submitted relate to
'representatives' of title guaranty compan-
ies under Section 21 of Article 1302-a of the
Revised Civil Statutes of 1929. We are not
inquiring with respect to abstracters who are
simply conducting an abstract business or who
are simply compiling abstracts. Our questions
relate to such a 'representative' of a title

company in the course of his business of representing the company in soliciting, writing, or otherwise participating in the issuance or servicing of title insurance policies.

"Questions:

"1. What constitutes such an abstract plant, as the term is used in Section 21, Article 1302-a, of the Revised Civil Statutes, as will qualify the 'person, firm, or corporation, owning and operating an abstract plant in such county' for appointment by any title company as its representative and permit the making of such arrangements for division of premiums between the title company and its representative as may be approved by the Board of Insurance Commissioners. In this connection please define, and specify as fully as convenient:

"(a) The character of records required.

"(b) The minimum area that such records must cover.

"(c) The period of time such records must cover.

"(d) Whether or not the Department may require that the contract of appointment, and division of premiums, must specify the area for which the representative is appointed in order that the Department may be sure such representative has the requisite abstract plant for such area.

"2. May the Board of Insurance Commissioners withhold its approval to an arrangement for the division of premiums between the title company and its representative until evidence is submitted to the Board showing that such representative owns and operates an abstract plant as defined or explained by you

in answer to Question 1?

"3.  May the Board of Insurance Commis-
sioners disapprove, or revoke its approval
of, an arrangement with reference to divi-
sion of premiums entered into between the
title company and its representative if the
Board later learns that the abstract plant
of the representative does not in fact con-
form to, or does not in fact continue to
conform to the requirements of an abstract
plant as such is defined or explained by
you in answer to Question 1."

Article 1302-a, V. C. S., contains provisions
authorizing and regulating the conduct of the title in-
surance business in Texas, and is especially applicable
to those phases of the title insurance industry which
are peculiar in the field of insurance.  It tends to
combine the formerly distinct business of title guaran-
ty with the business of title insurance and obviously
contemplates that the business of guaranteeing and in-
suring titles is to be considered as insurance business
and is to be conducted and regulated in a manner similar
to the conduct and regulation of the insurance business
generally.

Section 21 of Article 1302-a reads:

"No commissions, rebates, discounts or
other device shall be paid, allowed or per-
mitted, by any company, domestic or foreign,
doing the business provided for in this Act,
relating to title policies or underwriting
contracts; provided this shall not prevent
any title company from appointing as its
representative in any county any person,firm
or corporation owning and operating an ab-
stract plant in such county and making such
arrangements for division of premiums as may
be approved by the Board of Insurance Commis-
sioners."

Substantially the same questions as now presented
were considered under a former Attorney General in Opinion
No. 0-7300.  We will therefore reconsider the problems pre-
sented in connection with Opinion No. 0-7300, and will ap-
proach the matter as one of first impression.

The problems raised in your first inquiry and at this time have been the subject of much controversy among those engaged in the title insurance and abstracting business. Some of the title insurance companies and their representatives have built up, and invested considerable sums in, extensive facilities for the preparation of abstracts, and have formed a definite conception of th minimum facilities requisite to what is termed by them a "complete" abstract plant, as contemplated by Section 21. These companies and representatives are faced with competition by companies appointing representatives who maintain less than such minimum facilities, and who, it is feared, will, by the inadequacy of their facilities,cause policies to be written on bad titles, thereby causing eventual impairment of the financial stability of the com panies they represent. It is feared by them that a break down will occur in the high standard of security offered by the title insurance industry.

Able briefs have been submitted to this office by those maintaining that such minimums are contemplated by Section 21, and numerous conferences have been held wherein these parties have presented orally many forceful and persuasive arguments on their points. Equally able briefs and arguments have been presented by those opposed to such construction of Section 21.

In spite of the ever increasing tempo of the controversy during the eighteen years of operation under this Act, we have found the Legislature apparently satisfied with its provisions, there having been no amendments to Section 21 enacted. Nor, in so far as can be ascertained, was any attempt made during the recent session of the Legislature to clarify or amplify this section. Our investigation reveals that the title insurance industry continues to enjoy an almost negligible loss ratio, and an increasing volume of business.

Section 21 contains provisions common to statutory regulations of other lines of insurance, prohibiting the granting of commissions, rebates, discounts, and othei concessions to insurance buyers considered to constitute detrimental and unfair competition, and which lead to discrimination by the company as between insured in the cost of insurance. As stated in Couch on Insurance, Volume 3, Section 584, page 1872:

"The object or intent of statutes aimed against discrimination and rebates is that

> uniform rates shall be established and main-
> tained, so as to secure all persons equality
> as to burdens imposed, as well as to benefits
> derived, by preventing discrimination by in-
> surers in favor of individuals of the same
> class, either as to premiums charged or divi-
> dends allowed, or, as has been stated, in or-
> der that prospective/ insurants of the same
> class shall not be unfairly treated or dis-
> criminated against, by inducements being given
> to one of such class, which are not available
> to all therein."

The proviso in Section 21 effects an exception to the prohibition against commissions, rebates, discounts, etc. It provides in effect that the appointment by a title insurance company of a person, firm or corporation own- ing and operating an abstract plant as its representative, with compensation to the representative on a division of premiums basis, shall not constitute a violation of the rule against discrimination and unfair competition where such arrangement is subject to supervision by the Board of Insurance Commissioners. In such cases, it makes lawful that which otherwise might be unlawful.

The clauses of the caption of the Act describing the various sections thereof are set out in the same se- quence as the sections described. Our interpretation of the scope and purpose of Section 21 is supported by the language of the caption of the Act in that it describes Section 21 as "prohibiting commissions, rebates and dis- counts by corporations doing business under this Act." This is the only language contained in the caption specif- ically descriptive of Section 21. The only subject con- tained in this clause of the caption is "commissions, rebates and discounts" and nothing is contained in this language to indicate the purpose of Section 21 to be otherwise. Considerations of constitutionality impel us to construe the body of the Act in a manner consistent with the stated purpose of the Act, as contained in the caption. The caption is, of course always considered as valid evidence of the legislative intent.

We must therefore assume that the proviso was intended to preserve a practice in existence at the time of the passage of the Act, and was designed to protect the companies from a possible interpretation which would pro- hibit a division of premiums as payment for legitimate underwriting services performed by abstractors, and at the

same time to afford supervision by the Board of such division in order to prevent abuses of the rule against rebates, etc. Given this interpretation, any uncertainty in the language of Section 21 is minimized. The purpose of the proviso is clear, consistent with the caption, consistent with the usual regulation of other fields of insurance activity and consistent with the negative language used in the proviso.

Under this conception of Section 21, the phrase "owning and operating an abstract plant in such county" appears to be descriptive of the person, firm or corporation who may be appointed as a "representative" and with whom the company may arrange for a "division of premiums." It affords the company the privilege of using such persons, firms and corporations on such a basis. The services of abstracters in the title insurance industry go beyond mere production and are akin to underwriting and inspection of proposed risks. The industry has developed a scheme of compensation based upon a division of premiums and the proviso preserves that method of doing business.

In our opinion, the representative contemplated must, at the time of appointment, be engaged in the business of preparing abstracts of title to, and interests in, land in the county in which he or it is appointed as a representative; that the representative must own and operate such business; and that such business must be conducte from and at a definite place in the county, before the Board is authorized to approve an arrangement for division of premiums. It is this place of business, plus the equip ment therein designed for and used in the preparation of abstracts which constitutes the "plant" of the representative. It must be definite and ascertainable. In our opinion, the Board may require a reasonable showing that these requirements exist before executing its approval of the division of premiums arrangement. We further believe that if at any time, any of the named conditions cease to exist, the Board is warranted and required to withdraw or suspend its approval of the division of premiums arrangement.

We do not believe that the extent or character of facilities owned and utilized by the abstracters are th subject of an exact formula or standard. Nor can we antici pate the circumstances surrounding a situation which may i volve the use of a representative to effect a rebate or unlawful commission to an insured or others in the procure ment of business. These are matters which will have to be

determined by the Board in each situation where it is called upon to approve a division of premiums arrangement.

We do, however, believe that the language of Section 21 restricts the activities of the representative to the county in which he owns and operates a plant. This appears to be clearly required by the language of Section 21 authorizing the appointment "in any county", of a "person, firm or corporation owning and operating an abstract plant in such county." (Underscoring ours.)

To sum up, we do not believe that any particular type or character of records are necessarily required by this statute, so long as they are sufficient for actual operation of an abstract business. In this regard, all that is required is that the representative be bona fide engaged in performing the services of an abstracter, the particular methods and facilities which he uses being primarily a matter for his determination in accomplishing his undertaking to the title insurance companies and to the public. Whether he maintains all records of a particular character, whether they cover a particular area, or whether they cover a particular time, being merely evidentiary matters on the question of whether a plant in fact exists.

The Board appears to be given ample authority to prevent abuses of the privilege granted by Section 21. The whole arrangement for division of premiums appears to be subject to supervision by the Board. Certainly no title insurance company could complain of a disapproval of a division of premiums arrangement, or withdrawal of such approval if such disapproval or withdrawal of approval is predicated upon the existence of a situation violative of this Act. Responsibility appears to rest first upon the company to ascertain that it does not appoint or continue its appointment of one who does not qualify under the Act as a representative. Two conditions exist as a condition precedent to lawful operations through a "representative" under Section 21. First, the representative must be the owner and operator of an abstract plant, and second, the arrangement must be approved by the Board.

The main issue is drawn by the contending parties on the question of the completeness of the abstract plant contemplated by Section 21, and whether or not the statute contemplates a "complete" plant as a condition precedent to approval by the Board of the premium division arrangements or to appointment by the title insurance companies.

As indicated by our remarks, we are convinced that Section 21 is directed solely to the matter of discrimination. Be that as it may, in our search for evidence of the legislative intent, we have examined the legislative history of this Act. The text of the original bill in the form originally introduced in the House of Representatives and as now on file in the office of the Secretary of State, used the phrase "a complete abstract plant" in Section 21. Upon committee recommendation, this specific language was changed by amendment prior to passage by the House, and as changed, carried into the Act as passed by the Senate, deleting the words "a complete" and substituting in lieu thereof, the word "an", thereby indicating a specific intent to reject the idea that a "complete" plant is necessary to an appointment and approval of the division of premiums arrangement by the Board. We cannot, of course, write into this law that which the Legislature has specifically rejected.

To require the representatives' facilities to cover all of the records on all of the lands in a particular county might have the effect of closing the door to those experienced and qualified abstracters who might wish to restrict their services to only those lands within a county on which there are adequate records to afford the compiling of a useful abstract. From our investigation, we find that there are situations in some counties where abstracters have not attempted to maintain records on certain portions of the lands within the county because of utter confusion in those records.

Again, we see no reason to close the door to those who wish to limit their coverage of the records on certain lands to only those going back to the date of a particular subdivision or survey. Such a limitation would appear to be justified where those concerned with titles within that particular area, by common consent, assume the titles to be good back of certain subdivisions or surveys, and that buyers are not warranted to go to the expense of procuring and examining copies or abstracts of the older records and instruments. This is also true where printed base abstracts are available in plentiful quantities.

It cannot be said that such an abstracter who so limits his coverage is not the owner and operator of an abstract plant.

At all events, if the authority given or the

iteral provisions of Article 1302-a are inadequate to mplement adequate supervision and control of the title nsurance business, consistent with the public interest, e believe that these problems should be presented to the egislature for clarification and implementation.

Subject to this further clarification and dis-ussion, we affirm the similar holdings of Opinion No. -7300. This former opinion was written before the 50th egislature convened and was presumably known to the egislature. It was actually known to all interested par-ies. No attempt was made before the Legislature to amend r place a different interpretation on Section 21. This ends great weight to the correctness of the former opin-on and the conclusions herein made.

## SUMMARY

The phrase "owning and operating an abstract plant" as used in Section 21 of Article 1302-a, V. C. S., is descriptive of the type of business in which a person, firm or corporation must be engaged as a condition precedent to its appoint-ment as a representative of a title insurance company upon a "division of premiums" basis and is an exception to the main purpose of Section 21 to prevent commissions, rebates, discounts and other unfair and discriminatory practices. An "abstract plant" as used in Section 21 contem-plates the place of business and facilities there-in utilized by the abstracter, the particular type and quantity of records or facilities being mere-ly evidentiary considerations in determining the bona fide existence of the plant.

It is the duty of the Board of Insurance Commissioners to determine that the representative owns and operates an abstract plant and to dis-approve or revoke its approval of the appointment and division of premiums arrangement, in the event of a violation of the requirements of Section 21.

Yours very truly

APPROVED

ATTORNEY GENERAL

NMc/rt

ATTORNEY GENERAL OF TEXAS

By

Ned McDaniel
Assistant